**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MOHAMMED ETAYYEM,**

 Plaintiff,

v.              Case No.  8:12-cv-1672-T-30TGW

**BOB GUALTIERI, PINELLAS COUNTY**
**SCHOOL BOARD, JAMES ROBERT**
**MILLER, WALTER D. BONASORO,**

 Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Bob Gualtieri's Motion to Dismiss Counts I and IV (Dkt. 7), Defendant Pinellas County School Board's Motion to Dismiss Counts V and VI (Dkt. 4), and Plaintiff's Responses in opposition (Dkts. 13 & 14). The Court, having reviewed the motions, responses, and being otherwise advised of the premises, concludes that Bob Gualtieri's motion should be granted and the School Board's motion should be denied as to Count V and granted as to Count VI.

## BACKGROUND

During the relevant time, Plaintiff Mohammed Etayyem was a student at Dunedin High School located in Pinellas County, Florida.  Defendant Bob Gualtieri is the sheriff for Pinellas County (the "Sheriff").  Defendant Pinellas County School Board (the "School Board") is the governing body of the Pinellas County school district responsible for the

control, operation, organization, management, and administration of Pinellas County schools. The Sheriff provides law enforcement services to Dunedin High School through a School Resource Deputy Agreement with the School Board. Under the School Resource Deputy Agreement, deputies assigned to provide law enforcement services (School Resource Deputies) act as both law enforcement officers and school administrators.

On January 27, 2011, Defendants James Robert Miller and Walter D. Bonasoro (collectively, the "Deputies") were serving as School Resource Deputies for Dunedin High School. When Etayyem arrived at school that day, he was sent to the School Resource Office to see the Deputies, who proceeded to search him. The Deputies did not find any marijuana on Etayyem and he then exited the School Resource Office.

The complaint alleges that Deputy Miller claimed that he followed Etayyem out of the School Resource Office in an effort to "protect" him and to investigate Etayyem's use of profanity in violation of a school rule. Deputy Miller attacked Etayyem from behind and threw him on the ground, punching him repeatedly. Deputy Bonasoro then pursued Etayyem and stepped on Etayyem's hand and elbow. Deputy Miller then pulled Etayyem to his feet and twisted Etayyem's right arm behind his back, forcing Etayyem's arms over his head in a hunched position. As a result of the Deputies' actions, Etayyem suffered injuries to his face, nose, and hand.

Subsequently, Etayyem provided notice to the Sheriff and the School Board of the January 27, 2011 incident and they did not resolve Etayyem's claims of injuries. Etayyem

brings the instant action against the Defendants under 42 U.S.C. § 1983 and related tort claims under Florida law based on the January 27, 2011 incident.

This case is at issue upon the motions to dismiss filed by the Sheriff and the School Board.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

I. **The Sheriff's Motion to Dismiss Counts I and IV**

A. **Count I**

In Count I, Etayyem alleges a claim against the Sheriff for violation of Etayyem's constitutional rights under 42 U.S.C. § 1983. This claim alleges that the force used by the

Deputies was excessive under the circumstances and constituted an excessive use of force in violation of Etayyem's rights under the Fourth Amendment of the United States Constitution. The Sheriff argues that this claim is insufficient under Fed. R. Civ. P. 12(b)(6).

The Sheriff is correct that Etayyem cannot rely upon a theory of *respondeat superior* to hold him liable for the Deputies' conduct under section 1983. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Thus, in order to impose liability against the Sheriff, Etayyem must allege that (1) his constitutional rights were violated; (2) the Sheriff had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *Id.* The Sheriff argues, in part, that Etayyem's allegations do not establish the second element. The Court agrees that the allegations are insufficient to state a claim with respect to the second element.

The parties agree that the second element of deliberate indifference can be shown, in the absence of a specific custom or policy, where the likelihood for constitutional violation is so high that the need for training is *obvious* based on the duties assigned to specific officers. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The Eleventh Circuit noted in *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998):

> To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. *See Board of County Com'rs v. Brown,* 520 U.S. 397, 117 S. Ct. 1382, 1390-91, 137 L.Ed.2d 626 (1997); *Young v. City of Augusta, Georgia,* 59 F.3d 1160, 1171-72 (11th Cir. 1995); *Church v. City of Huntsville,* 30 F.3d 1332, 1342-46 (11th Cir. 1994); *Wright v.*

> *Sheppard,* 919 F.2d 665, 674 (11th Cir. 1990); *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1556-57 (11th Cir. 1989). This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. For example, in *Wright v. Sheppard,* 919 F.2d 665 (11th Cir. 1990), this Court held that a sheriff's department was not liable for a deputy's acts when "no evidence of a history of widespread prior abuse ... put the sheriff on notice of the need for improved training or supervision." *Id.* at 674. Indeed, in *Church v. City of Huntsville,* 30 F.3d 1332 (11th Cir. 1994), this Court reversed a district court's preliminary injunction against the City of Huntsville, holding that the plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the City was aware of a prior incident in which constitutional rights were similarly violated. *Id.* at 1342-46. *See also Popham v. City of Talladega,* 908 F.2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train). More importantly, in *Brooks v. Scheib,* 813 F.2d 1191 (11th Cir. 1987), even though there had been ten citizen complaints about police officer Scheib, this Court held that the City did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit." *Id.* at 1193. This Court aptly noted, "Indeed, the number of complaints bears no relation to their validity." *Id.*

Here, the complaint fails to allege specific facts related to an obvious need for training the Deputies with respect to differences in the actions they should take when acting as a law enforcement officer compared to actions when they are acting as school administrators. For example, there are no allegations of prior incidents of School Resource Deputies using unreasonable or excessive force towards students for school-rule violations. There are also no allegations demonstrating that the likelihood for a constitutional violation was so high that

the need for training would have been obvious. *See Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).

The only remaining option for alleging the necessary custom or policy is to allege that the Sheriff ratified the Deputies' conduct. Ratification occurs when the Sheriff had an opportunity to review the Deputies' conduct and agrees with their conduct. *See Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1189-90 (11th Cir. 2004). Etayyem alleges that the Sheriff knew of the Deputies' actions but failed to take any remedial action. This allegation is insufficient to establish ratification because the Sheriff's failure to take any action after being placed on notice of the Deputies' conduct is not tantamount to the Sheriff ratifying or agreeing with the conduct.

In sum, the allegations with respect to the second element of establishing a custom or policy are too conclusory to meet the standard to state a claim under *Iqbal* and *Twombly*. Accordingly, the Sheriff's motion to dismiss with respect to Count I is granted without prejudice to Etayyem to amend this claim to allege sufficient factual allegations.

**B.   Count IV**

Etayyem alleges a claim of negligent training under Florida law against the Sheriff in Count IV. The Sheriff argues that this claim is insufficient because Etayyem challenges the content of the program as opposed to the way in which the existing program was implemented. The Court agrees that the allegations are insufficient to establish that the Sheriff was negligent in the *implementation or operation* of the training program. Here,

Etayyem alleges that the Sheriff breached a duty to train by failing to have "any policy, procedure or training" regarding the appropriate use of force by deputies in schools who may be called on to deal with violations of school rules as well as criminal offenses. The Sheriff is correct that sovereign immunity is not waived for acts related to "discretionary" policy choices. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001).

Etayyem's response argues that the complaint contains allegations of a specific breach in the Sheriff's training of the Deputies, which is operational and not barred by sovereign immunity. Although Etayyem is correct that a claim of negligent training for the Sheriff's failure to train the Deputies, which resulted in the violation of Etayyem's constitutional rights, relates to the Sheriff's operational policy, and not a discretionary policy, the allegations are too conclusory to state a claim.

Accordingly, the Sheriff's motion to dismiss with respect to Count IV is granted without prejudice to Etayyem to amend this claim to allege sufficient factual allegations.

## II. The School Board's Motion to Dismiss Counts V and VI

### A. Counts V

In Count V, Etayyem alleges a claim against the School Board for negligent supervision. The School Board argues that this claim is insufficient under Fed. R. Civ. P. 12(b)(6). The Court disagrees.

As Etayyem points out, the School Board's argument is based on its version of the facts that the Deputies' actions were taken in pursuit of a criminal investigation. Assuming

the truth of Etayyem's allegations, this argument fails. Specifically, Etayyem alleges the following: the January 27, 2011 incident occurred during school hours while Etayyem was under the School Board's supervision; the School Board failed to protect Etayyem from the Deputies' actions; the School Board failed to supervise, train, or otherwise prescribe policies for the Deputies to conduct investigations when investigating alleged violations of school rules as school administrators; and the January 27, 2011 incident was reasonably foreseeable, given the lack of training to the Deputies to differentiate between law enforcement violations and school-rule violations.

These allegations are sufficient to state a claim of negligent supervision under Florida law. Accordingly, the School Board's motion to dismiss with respect to Count V is denied.

### B. Count VI

Count VI alleges a section 1983 claim against the School Board. Here, the School Board asserts virtually the same arguments as the Sheriff, to wit, that Etayyem cannot establish the School Board's deliberate indifference to the constitutional rights of students. The Court agrees that this claim is insufficiently pled for the same reasons discussed above. Simply put, there are no allegations that the School Board was placed on notice that School Resource Deputies were acting unreasonably or inappropriately towards the students, or that it was obvious that training was necessary under the circumstances. Accordingly, the School Board's motion to dismiss with respect to Count VI is granted without prejudice to amend.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendant Bob Gualtieri's Motion to Dismiss Counts I and IV (Dkt. 7) is granted.  Plaintiff may amend these claims within fourteen (14) days of this Order.

2.      Defendant Pinellas County School Board's Motion to Dismiss Counts V and VI (Dkt. 4) is denied with respect to Count V and granted with respect to Count VI.  Plaintiff may amend Count VI within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on September 10, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-1672.mtsdismiss4&7.frm